# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| JANE WALLACE, *et al*, | : | |
| Plaintiffs, | : | |
| v. | : | CA 14-00119-CG-C |
| BLUE CROSS AND BLUE SHIELD OF ALABAMA, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), on the Defendant's motion to dismiss (doc. 16), the Plaintiffs' response (doc. 21) and the Defendant's reply (doc. 22). After consideration of the Defendant's motion and the briefs of the parties, it is the Magistrate Judge's **RECOMMENDATION** that the Defendant's motion to dismiss be **GRANTED** as discussed below.

## Background

The Plaintiffs, Jane Wallace and her husband, John Wallace, bring this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), following the Defendant, Blue Cross Blue Shield of Alabama's denial of Ms. Wallace's request for health benefits. (Doc. 11.) The Plaintiffs are participants in a medical insurance plan governed by ERISA and administered by the Defendant. (*Id.*, ¶ 1.) In April 2011, as part of her treatment for breast cancer, Ms. Wallace underwent a lumpectomy. (*Id.*, ¶ 8; doc. 21 at 1.) Plaintiffs allege that, "pursuant to the recommendation and advice of [Ms. Wallace's] surgeon, reconstructive surgery was scheduled and was determined to be medically and reasonably necessary as a result of

her treatment for breast cancer." (Doc. 11, ¶ 8.) Plaintiffs allege that "the Defendant . . . refused to cover said surgery and . . . wrongfully determined that the medical treatment recommended for Jane Wallace is simply 'cosmetic surgery,' and therefore not covered." (*Id.*, ¶ 12.) The Plaintiffs contend that the Defendant should not have refused to cover the surgery because the surgery was "reconstructive," rather than "cosmetic." (*Id.*, ¶ 11.)[1]

In Count I of the Amended Complaint, the Plaintiffs assert a breach of fiduciary duty claim under section 502(a)(2) of ERISA. (*Id.*, ¶¶ 13-20.) Specifically, the Plaintiffs allege that the Defendant "breached its [fiduciary] duty by wrongfully failing and refusing to provide the necessary insurance coverage for the medical procedure that was recommended by [Ms.] Wallace's treating physician, and which is a covered benefit in Defendant's policy." (*Id.*, ¶ 18.) In Count II, the Plaintiffs assert a claim for denial of benefits under section 502(a)(1)(B) of ERISA. (*Id.*, ¶¶ 21-28.) The Plaintiffs allege that "[Ms.] Wallace's claim was wrongfully denied by the Defenant, as the Plan provides for a beneficiary under the plan to receive coverage for reconstructive surgery." (*Id.*, ¶ 25.) In Count III, the Plaintiffs seek "equitable relief pursuant to ERISA § 502(a)(3)(B)." (*Id.*, ¶¶ 29-32.) Specifically, the Plaintiffs "seek a Declaratory Judgment from this Court

---

[1] The Plaintiffs allege that, pursuant to the Defendant's 320 policy, "'Reconstructive Surgery' is any surgery done primarily to restore or improve the way the body works or correct deformities that result from disease, trauma, or birth defects. Reconstructive surgery is a covered benefit; [c]osmetic surgery is not." (Doc. 11, ¶ 9.) The Plaintiffs further allege that, pursuant to the Defendant's 106 policy, "[the Defendant] will cover reconstructive surgery as any surgery done primarily to restore or improve the way the body works or correct deformities that result from disease, trauma, or birth defects." (*Id.*, ¶ 10.) Moreover, the Plaintiffs cite to the terms of the Plan documents regarding coverage for reconstructive surgery following a mastectomy. (Doc. 11 at 5 n.3.) The Plaintiffs quote the following provision from the Plan: "A member who is receiving benefits in connection with a mastectomy will also receive coverage for reconstruction of the breast on which a mastectomy was performed and reconstruction of the other breast to produce a symmetrical appearance; prosthesis[;] and treatment of physical complications at all states of the mastectomy, including lymphedema." (*Id.* (quoting doc. 1 at 64).) The Plaintiffs do not provide citations for the 320 policy or 106 policy, but the language referenced from those policies is also found in the Plan documents attached to the original complaint, (*see* doc. 1 at 71).

[that (1)] declar[es] that the medical procedure proposed and recommended by the treating surgeon of the Plaintiffs is in fact covered by the medical insurance contract . . . and [(2)] . . . order[s] the Defendant to provide medical insurance coverage for said reconstructive surgery." (*Id.*, ¶ 32.)

The Defendant has filed a motion to dismiss with prejudice all claims asserted in the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 16.) The Plaintiffs have filed a response in opposition to the motion (doc. 21), and the Defendant has filed a reply in support of the motion (doc. 22).

### **Legal Standard for Rule 12(b)(6) Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss for failure to state a claim questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true, *see, e.g., United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990), and all factual allegations, moreover, are to be construed in the light most favorable to the plaintiff, *see, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598 (1989); *see also Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (same).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

3

will not do.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

*Id*. at 678-79 (internal citations and quotation marks omitted); *see also id*. at 680 (a plaintiff must nudge his claims "across the line from conceivable to plausible."); *compare Speaker*, 623 F.3d at 1381 ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer enough factual content to 'raise a right to relief above the speculative level.'"), *with Robinson v. Correctional Med. Assocs., Inc.*, Civil Action No. 1:09–cv–01509–JOF, 2010 WL 2499994, at *2 (N.D. Ga. June 15, 2010) ("Factual allegations in a complaint need not be detailed but 'must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in

4

the complaint are true (even if doubtful in fact).'" (quoting *Twombly*, 550 U.S. at 555) (internal citations and emphasis omitted)).

## Analysis

### I. Section 502(a)(2) Breach of Fiduciary Duty Claim

Section 502(a)(2) of ERISA authorizes civil actions "brought . . . by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409 [of ERISA]." 29 U.S.C. § 1132(a)(2). Section 409 provides as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). The Supreme Court has interpreted section 502(a)(2) as authorizing actions to recover for injuries to a plan, not for injuries to individual beneficiaries. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 105 S. Ct. 3085, 3089, 87 L. Ed. 2d 96 (1985) (finding "that recovery for a violation of § 409 inures to the benefit of the plan as a whole"); *id.* at 142 ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."); *id.* at 144 ("[T]he entire text of § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself."); *Varity Corp. v. Howe*, 516 U.S. 489, 515, 116 S. Ct. 1065, 1079, 134 L. Ed. 2d 130 (1996) ("[The plaintiffs] could not proceed under [§ 502(a)(2)] because that provision, tied to § 409, does not provide a remedy for individual beneficiaries." (citing *Russell*, 473 U.S. at 144)); *Fuller v. Suntrust Banks, Inc.*, 744 F.3d 685, 695 (11th Cir. 2014) ("[T]he plan

5

participant cannot seek to recover personal damages for misconduct, but must instead seek recovery that 'inures to the benefit of the plan as a whole.'" (citing *Russell*, 473 U.S. at 140)).

In this case, the Plaintiffs assert a breach of fiduciary duty claim under section 502(a)(2) arising from the Defendant's failure to provide insurance coverage for Ms. Wallace's proposed reconstructive surgery. (Doc. 11, ¶ 18.) The Plaintiffs allege that the failure to provide coverage constitutes a breach of the Defendant's fiduciary duty, (*id.*), that, as a result of that breach, Ms. Wallace was "deprived of necessary medical treatment, (*id.*, ¶ 19), and that the Defendant "must restore the Plaintiffs to the position they would have been in had Defendant not breached its fiduciary duty, as required by . . . § [409 of ERISA]," (*id.*, ¶ 20).

The Defendant argues that the Plaintiffs have failed to state a claim under section 502(a)(2) because they seek recovery, not on behalf of the Plan, but on behalf of themselves as beneficiaries. (Doc. 16 at 3-5 (citing *Russell*, 473 U.S. at 142-44).) The Plaintiffs argue that their claim is not foreclosed under *Russell* because, in the Supreme Court's subsequent decision in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 128 S. Ct. 1020, 169 L. Ed. 2d 847 (2008), the Court permitted individual recovery under section 502(a)(2). (Doc. 21 at 4-5.) As explained below, the Plaintiffs misunderstand the Supreme Court's holding in *LaRue* and its applicability here.

In *LaRue*, the Supreme Court "consider[ed] whether [section 502(a)(2)] authoriz[ed] a participant in a defined contribution pension plan to sue a fiduciary whose alleged misconduct impaired the value of plan assets in the participant's individual account." *LaRue*, 552 U.S. at 250. The Court discussed its decision in *Russell* where it concluded that section 502(a)(2) provides a remedy to "'protect the entire plan, rather than . . . the rights of an individual beneficiary.'" *Id.* at 254 (quoting *Russell*, 473

6

U.S. at 142). The Court commented that "*Russell's* emphasis on protecting the 'entire plan' from fiduciary misconduct reflects the former landscape of employee benefit plans. That landscape has changed. Defined contribution plans dominate the retirement plan scene today." *Id.* at 254-55 (footnote omitted). Thus, the Court distinguished defined contribution retirement plans, such as the 401(k) plan at issue in that case, from defined benefit plans, which were at issue in *Russell*. *Id.* at 255-56. Specifically, the Court stated as follows:

> The "entire plan" language in *Russell* speaks to the impact of § 409 on plans that pay defined benefits. Misconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan. It was that default risk that prompted Congress to require defined benefit plans (but not defined contribution plans) to satisfy complex minimum funding requirements, and to make premium payments to the Pension Benefit Guaranty Corporation for plan termination insurance.
>
> For defined contribution plans, however, fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive. Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409. Consequently, our references to the "entire plan" in *Russell,* which accurately reflect the operation of § 409 in the defined benefit context, are beside the point in the defined contribution context.

*Id.* (citation omitted).

Notably, however, the Court's holding in *LaRue* still limited recovery under section 502(a)(2) to actions to redress injuries to a plan. *See id.* at 256. The Court "h[e]ld that although **§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries**, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id.* (emphasis added).

7

In this case, unlike in *LaRue*, the Plaintiffs do not seek recovery for harm caused to plan assets held in an individual defined contribution retirement account. (Doc. 11, ¶¶ 13-20.) The Plaintiffs do not contend that the alleged breach of fiduciary duty caused an injury to plan assets of any kind. (*Id.*) Rather, the Plaintiffs allege that Ms. Wallace suffered an individual injury when she was denied health insurance coverage and "deprived of necessary medical treatment." (*Id.*, ¶¶ 18-19.) They seek to recover for their personal losses, not losses to the Plan. (*Id.*) Therefore, the Plaintiffs cannot state a claim for breach of fiduciary duty under section 502(a)(2), *see Varity*, 516 U.S. at 515; *Russell*, 473 U.S. at 144; *Fuller*, 744 F.3d at 695, and *LaRue* does not provide otherwise. *See Walker v. Federal Express Corp.*, 492 Fed. App'x 559, 563 (6th Cir. July 11, 2012) ("[In *LaRue*, t]he Supreme Court . . . limited the scope of its holding to only defined contribution plans and did not disrupt the Court's prior holding in *Russell*. . . . *LaRue* does not open the door for individual relief under the circumstances presented in this case. . . . [T]he record does not provide any facts that tend to show that any claim besides [p]laintiff's was mishandled or that even if mishandling was found to have occurred, such conduct reached beyond [p]laintiff and caused plan wide injury. Under these circumstances, it is difficult to characterize the remedy [p]laintiff seeks as anything other than personal."); *Smith v. Med. Benefit Administrators Group, Inc.*, 639 F.3d 277, 283 (7th Cir. 2011) ("The Court's more recent decision in *LaRue* . . . is of no help to [plaintiff] vis-à-vis the scope of section 502(a)(2). *LaRue* simply holds that in the context of a defined contribution pension plan, in which there are individual accounts holding assets for each participant, malfeasance by a plan fiduciary that adversely affects the value of the assets held in such an account will support a suit under sections 409 and 502(a)(2) regardless of whether the wrongdoing affects one account or all accounts in the plan. . . . The plan at issue here, however, is a group health insurance plan, which is

the kind of defined benefit plan that the Court dealt with in *Russell* (and distinguished in *LaRue*), and which typically holds no assets in trust for any individual participant. It is *Russell* rather than *LaRue* that controls here, and as [plaintiff] has identified no injury to the plan, he has no viable claim for relief under section 502(a)(2)."); *Brown v. Validata Computer & Research Corp.*, Civil Action No. 2:12cv775-SRW, 2013 WL 3422477, at *3 (N.D. Ala. July 8, 2013) ("Section 502(a)(2) of ERISA—which permits a cause of action 'for appropriate relief under . . . section [409 of ERISA]'—provides a remedy only for injuries to a *plan*, either as a whole or to the plan assets within an individual account that is part of a defined contribution plan; it does not provide a remedy for individual injury." (emphasis in original) (citing *LaRue*, 552 U.S. at 254; *Varity*, 516 U.S. at 515; *Russell*, 473 U.S. at 144; *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217 (11th Cir. 2008))); *Dunn v. Harris Corp.*, 560 F. Supp. 2d 1260, 1265-66 (M.D. Fla. 2008) ("[Section 409] has been interpreted by the United States Supreme Court as meaning 'that recovery for [its violation] inures to the benefit of the plan as [a] whole' rather than to an individual. . . . [The plaintiff's] claim would not inure to the benefit of the plan as a whole, and thus she has no cause of action under § [502](a)(2). The Supreme Court's . . . decision in *LaRue* . . . does not alter this result." (citations omitted)); *Cook v. Campbell*, Civil Action No. 2:01cv1425-ID, 2008 WL 2039501, at *4 (M.D. Ala. May 12, 2008) ("Problematically, as plainly pleaded by [p]laintiffs, they seek relief for plan benefits payable directly to themselves. . . . Plaintiffs' remedy does not seek to hold [the Defendant] 'personally liable to make good to [the] plan any losses to the plan resulting from each breach . . . and to restore to such plan' the losses resulting from the breach. . . . *LaRue* did not alter the law in *Russell* (or the plain wording of § [409](a)) that any recovery under ERISA § 502(a)(2) against the breaching fiduciary must be paid to the plan, and not to individual participants. . . . The remedy requested by [p]laintiffs was foreclosed by *Russell*, and the

court finds that the remedy requested continues to be foreclosed under the holding in *LaRue*." (citations omitted)).

Because the Plaintiffs cannot state a section 502(a)(2) claim for breach of fiduciary duty,[2] it is **RECOMMENDED** that said claim be **DISMISSED WITH PREJUDICE**.

## II. Section 502(a)(1)(B) Wrongful Denial of Benefits Claim

The Defendant argues that the Plaintiffs cannot state a claim for wrongful denial of benefits because they failed to exhaust their administrative remedies before filing suit. (Doc. 16 at 5-6.)

> Although the text of ERISA is silent on the matter, the Eleventh Circuit Court of Appeals requires that a plaintiff exhaust her available administrative remedies before bringing ERISA claims in federal court. *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985); *Counts v. American General Life and Acc. Ins. Co*, 111 F.3d 105, 108 (11th Cir. 1997); *Springer v. Wal–Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990). The Eleventh Circuit Court of Appeals applies this rule to claims for benefits as well as claims for statutory violations of ERISA. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006).
>
> That being said, there are well-established exceptions to the exhaustion requirement, "the most familiar examples perhaps being when resort to the administrative route is futile or the remedy inadequate." *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980) (quotation omitted). Thus, the application of the exhaustion requirement is committed to the district court's sound discretion. *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990) *abrogated on other grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313 (11th Cir. 2001).

*Dickerson v. Physicians Pain Specialists of Alabama, P.C.*, Civil Action No. 10-0337-CG-C, 2011 WL 4591191, at *4 (S.D. Ala. Oct. 4, 2011).

Here, the Plaintiffs have not pled that they exhausted their administrative remedies before filing this suit. (*See* doc. 11.) However, the Plaintiffs argue that this Court should excuse their failure to exhaust their administrative remedies because

---

[2] The Plaintiffs' breach of fiduciary duty claim also fails because the Plaintiffs failed to exhaust their administrative remedies before filing suit. *See infra* Part II and note 5.

10

attempts at administrative review were futile. (Doc. 21 at 5-6.) The Plaintiffs articulate the futility of such attempts as follows:

> After the initial denial of their claim, the Plaintiffs requested that Defendant reassess its decision. However, the Plaintiffs continued efforts to have Defendant reconsider the denial of their claims were ineffective. Ultimately, the Plaintiffs' efforts to seek administrative review were futile. The Defendant was unwavering in its position to deny [Ms.] Wallace's claim for benefits for her reconstructive surgery following her breast cancer treatment. Nothing in the record indicates in any way that the position of Defendant's plan administrator would change if the Plaintiffs had pursued further administrative review.

(*Id.* at 6.)

The Plaintiffs must make a "'clear and positive' showing of futility" for the Court to excuse the exhaustion requirement. *Bickley*, 461 F.3d at 1330 (citing *Springer*, 908 F.2d at 901); *Springer*, 908 F.2d at 901 (citing *Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989));[3] *Bryant v. Cmty. Bankshares, Inc.*, No. 2:12-cv-562-MEF, 2014 WL 805917, at *2 (M.D. Ala. Mar. 3, 2014) ("[T]o overcome [d]efendants' motion to dismiss, the [plaintiffs] must make a clear and positive showing of futility." (citing *Engelhardt v. Paul Revere Life Ins. Co.*, 77 F. Supp. 2d 1226, 1233 (M.D. Ala. 1999))). Here, the Plaintiffs' statements regarding futility are vague and unsubstantiated. The Plaintiffs provide no evidence that they ever attempted to formally appeal the Defendant's decision to deny benefits. (*See id.* at 6.) They do not explain any of their "efforts to have Defendant

---

[3] In *Springer*, the Eleventh Circuit determined that the district court abused its discretion when it excused the plaintiff's failure to exhaust her remedies on the basis of futility. *Springer*, 908 F.2d at 901. The plaintiff had argued that pursuing administrative review would have been futile stating that, "[i]f they didn't pay it the first time, they are not going to pay it the second time." *Id.* The Eleventh Circuit concluded that "such 'bare allegations of futility are no substitute for the "clear and positive" showing of futility . . . required before suspending the exhaustion requirement.'" *Id.* (citing *Makar*, 872 F.2d at 83). Furthermore, the Eleventh Circuit rejected the district court's finding that administrative review was futile because "the internal appellate review is basically the same entity as the initial internal decider." *Id.* (citation and internal quotation marks omitted). The Eleventh Circuit commented that, "[i]f futility were established by the mere fact that the plan administrator who makes initial benefits decisions and trustees who review appeals share common interests or affiliations, the exhaustion of internal administrative remedies would be excused in virtually every case. *Id.*

11

reconsider the denial of their claims," and they do not explain how those efforts were "ineffective." (*See id.*) Furthermore, their bare assertions that the Defendant was "unwavering" and that it provided no indication that it would change its position after an appeal do not demonstrate that an appeal would have been futile. *See Springer*, 908 F.2d at 901; *McDuffie v. Flowers Hosp., Inc.*, No. Civ.A. 99-0990-CB-S, 2001 WL 102396, at *6 (S.D. Ala. Jan. 22, 2001) ("According to plaintiff, exhaustion would have been futile because the Plan Administrator denied her initial claim. . . . [P]laintiff's logic is skewed, for if initial denial of a claim rendered exhaustion futile, then there could never be an exhaustion requirement.").

The only case cited by the Plaintiffs in support of their futility argument, *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, is easily distinguishable from the instant case. *See Curry*, 891 F.2d at 846-47. In *Curry*, the Eleventh Circuit concluded that the district court did not abuse its discretion by excusing the exhaustion requirement because the defendant denied the plaintiff meaningful access to the plan's administrative review procedures by refusing to provide the plaintiff with the plan documents that described the remedies available under the plan and explained the reason plaintiff's claim was denied. *Id.* Here, there is no indication that the Defendant refused to provide the Plaintiffs with Plan documents or otherwise denied the Plaintiffs meaningful access to the administrative review procedures. (*See* docs. 11 and 21.)

Accordingly, the Plaintiffs have not shown that their failure to exhaust administrative remedies should be excused. Because the Plaintiffs failed to exhaust their administrative remedies and failed to make a sufficient showing regarding futility, it is **RECOMMENDED** that the Plaintiffs' claim for wrongful denial of benefits under section 502(a)(1)(B) be **DISMISSED**. However, it is **RECOMMENDED** that the

**DISMISSAL** be **WITHOUT PREJUDICE** to the Plaintiffs refiling their section 502(a)(1)(B) claim after exhausting their administrative remedies.

### III. Section 502(a)(3) Claim for Equitable Relief

Section 502(a)(3) of ERISA provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3). However, in *Varity Corp. v. Howe* "the Supreme Court emphasized that Section 502(a)(3) is a 'catchall' provision that provides relief only for injuries that are not otherwise adequately provided for by ERISA." *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287 (11th Cir. 2003) (citing *Varity*, 516 U.S. at 515). Furthermore, in *Katz v. Comprehensive Plan of Group Insurance*, 197 F.3d 1084 (11th Cir. 1999), the Eleventh Circuit "held that the availability of relief under Section 502(a)(3) was in no way dependent on the success or failure of the Section 502(a)(1)(B) claim because 'the availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it guarantee, an adjudication in one's favor.'" *Ogden*, 348 F.3d at 1287 (citing *Katz*, 197 F.3d at 1089) (other citations omitted). "The central focus of the *Varity* inquiry 'involves whether Congress has provided an adequate remedy for the injury alleged elsewhere in the ERISA statutory framework.'" *Id.* at 1288 (citing *Hembree ex rel. Hembree v. Provident Life & Accident Ins. Co.*, 127 F. Supp. 2d 1265, 1274 (N.D. Ga. 2000)).

In this case, the Plaintiffs' section 502(a)(3) claim for equitable relief can be redressed under section 502(a)(1)(B). In support of the Plaintiffs' claim for equitable relief, they allege that "[Ms.] Wallace was unable to receive necessary medical treatment due to the Defendant's denial of benefits." (Doc. 11, ¶ 31.) To redress that injury, the

Plaintiffs seek equitable relief in the form of a declaratory judgment (1) declaring that Ms. Wallace's proposed reconstructive surgery is a covered procedure under the Plan, and (2) "ordering the Defendant to provide . . . coverage for [the] surgery." (*Id.*, ¶ 32.) ERISA already provides an adequate remedy for that claim in section 502(a)(1)(B), which provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B); *see Russell*, 473 U.S. at 146-47 ("To recover the benefits due her, [the claimant] could have filed an action pursuant to § 502(a)(1)(B) . . . to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract, and to enjoin the plan administrator from improperly refusing to pay benefits in the future.").

Moreover, as discussed above, the Plaintiffs assert a claim under section 502(a)(1)(B) in Count II of their Amended Complaint, (doc. 11, ¶¶ 21-28), and their section 502(a)(3) claim is essentially a recasting of that claim as both claims are based on the same allegations and seek the same relief. (*Compare* doc. 11, ¶¶ 21-28 (alleging that the Defendant wrongfully denied Ms. Wallace's request to receive insurance coverage for the proposed reconstructive surgery and seeking to enforce her right to coverage under the insurance policy), *with id.*, ¶¶ 29-32 (same).) Because section 502(a)(1)(B) of ERISA provides an adequate remedy for the alleged wrongful denial of coverage, the Plaintiffs' claim under section 502(a)(3) is barred.[4] *See Lytle v. Lowe's Home Centers, Inc.*,

---

[4] The Plaintiffs do not dispute that section 502(a)(1)(B) of ERISA provides an adequate remedy for their injuries. (*See* doc. 21 at 6-7.) The Plaintiffs contend, without any citation to case law, that they can assert a claim for equitable relief based on the plain language of section 502(a)(3). (*Id.* at 6.) The Plaintiffs are mistaken. As stated above, the Supreme Court has limited the application of section 502(a)(3) to redressing injuries for which ERISA has not otherwise provided an adequate remedy. *See Varity*, 516 U.S. at 515.

14

No. 8:12-CV-1848-T-33, 2014 WL 1689279, at *9 (M.D. Fla. Apr. 29, 2014) ("The Court finds that section 502(a)(1)(B) would provide an adequate remedy to [the plaintiff] for the relief she seeks, and accordingly, the Court finds that bringing Count II under the guise of section 502(a)(3) is inappropriate."); *Seals v. Ret. Plan of Int'l Paper*, Civil Action No. 11-00001-KD-N, 2012 WL 177506, at *11 (S.D. Ala. Jan. 23, 2012) ("ERISA's 'catch-all' provision—Section 502(a)(3) . . . —does not save Count Two because [p]laintiff has an adequate remedy under [Section 502(a)(1)(B)] in Count One. Indeed, when a plan participant seeks the benefits that he contends should have been distributed under an ERISA plan, the appropriate remedy is not a claim for 'other appropriate relief,' but rather a claim under [Section 502(a)(1)(B)]." (citations omitted)); *Richerson v. Canada Life Assurance Co.*, No. Civ.A. 04-0490-C, 2005 WL 1027279, at *6 (S.D. Ala. May 2, 2005) ("It is clear to the Court that plaintiff's allegations, as set forth in the complaint, as amended, support not only a claim under § 502(a)(3) but, as well, a claim under § 502(a)(1)(B). Accordingly, plaintiff cannot maintain a breach of fiduciary duty claim against [the defendant] under 502(a)(3). In other words, this Court finds that plaintiff has an adequate remedy under § 502(a)(1)(B) and, therefore, she cannot alternatively plead and proceed under § 502(a)(3).").

Significantly, the section 502(a)(3) "catchall provision" does not become available to the Plaintiffs because their section 502(a)(1)(B) claim is foreclosed due to their failure to exhaust their administrative remedies.[5] *See Ogden*, 348 F.3d at 1288 ("[I]t is irrelevant for *Varity* purposes that the [plaintiffs] no longer have a viable Section 502(a)(1)(B) claim."); *Hembree*, 127 F. Supp. 2d at 1273-74 (concluding that the plaintiff's claim under

---

[5] In fact, the Plaintiffs' failure to exhaust their administrative remedies provides an alternative basis for dismissal of their section 502(a)(3) claim. *See Bickley*, 461 F.3d at 1330 (affirming the dismissal of ERISA claims brought pursuant to sections 502(a)(2) and 502(a)(3) for the plaintiff's failure to exhaust administrative remedies).

15

section 502(a)(3) was barred because ERISA provided an adequate remedy for his injury under section 502(a)(1)(B), even though his section 502(a)(1)(B) claim was barred by the statute of limitations). Section 502(a)(1)(B) provides an adequate remedy for the Plaintiffs' injury. The Plaintiffs simply failed to follow the proper procedures to pursue that remedy.

Accordingly, it is **RECOMMENDED** that Plaintiff's claim for equitable relief under section 502(a)(3) be **DISMISSED WITH PREJUDICE**.

### Conclusion

For the reasons stated herein, the Magistrate Judge **RECOMMENDS** that the Defendant's motion to dismiss (doc. 16) be **GRANTED**.

Specifically, the undersigned **RECOMMENDS** that

1. The Plaintiffs' section 502(a)(2) claim for breach of fiduciary duty, asserted in Count I of the Amended Complaint (doc. 11, ¶¶ 13-20), should be **DISMISSED WITH PREJUDICE**;

2. The Plaintiffs' section 502(a)(1)(B) claim for wrongful denial of benefits, asserted in Count II of the Amended Complaint (doc. 11, ¶¶ 21-28), should be **DISMISSED WITHOUT PREJUDICE;** and

3. The Plaintiffs' section 502(a)(3) claim for equitable relief, asserted in Count III of the Amended Complaint (doc. 11, ¶¶ 29-32), should be **DISMISSED WITH PREJUDICE**.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error

review of the magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 29th day of September 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**